IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SARAH GARVIN, | Case No. 1:24-cv-9442 |
| Plaintiff, | |
| vs. | |
| THRIVENT FINANCIAL FOR LUTHERANS, | **JURY TRIAL DEMANDED** |
| Defendant. | |

## COMPLAINT

Now comes the Plaintiff, Sarah Garvin, by attorney MICHAEL BARTOLIC of BARTOLIC LAW, and complaining against the Defendant, Thrivent Financial for Lutherans, Plaintiff alleges as follows:

### NATURE OF THE ACTION

1. This is a case over life insurance proceeds where the insurer rescinded the life insurance coverage after the insured's death for purportedly misrepresenting health status, where the insured correctly answered all questions on the insurance application and the insurer's underwriting file reveals it both investigated and knew about the health condition about which the insurer claimed to be ignorant.

2. Plaintiff brings this action against Defendant for breach of a life insurance contract, and statutory damages for bad faith denial of an insurance claim.

### THE PARTIES

3. Plaintiff is the daughter of the late Lindsay Garvin, and the beneficiary of his life insurance policy he took out with Defendant.

1

4. Defendant, Thrivent Financial for Lutherans, issued a life insurance policy, number VG2014840, insuring the life of Lindsay Garvin, on which Plaintiff was named the beneficiary. This claim relates to life insurance proceeds under the foregoing insurance policy number VG2014840. Defendant is liable for any proceeds payable under the life insurance contract.

## JURISDICTION AND VENUE

5. Jurisdiction of this Court is based upon Diversity Jurisdiction, which gives the District Court jurisdiction to hear civil actions where the amount in controversy exceeds $75,000 and is between citizens of different States.

6. This matter is between citizens of different States as defined in 28 U.S.C. § 1332. Plaintiff is a citizen of Illinois. Defendant is a citizen of Wisconsin as its principal place of business is in Wisconsin.

7. The amount in controversy exceeds $75,000. Plaintiff is allegedly due life insurance benefits in the amount of $100,000, plus interest, statutory penalties, and attorney's fees.

8. Section 155 of the Illinois Insurance Code permits the Court to award penalties and attorney's fees for a vexatious and unreasonable denial of an insurance claim. 215 ILCS 5/155. These amounts are considered for amount in controversy.

9. Statutory penalties under 215 ILCS 5/155 as of the day Plaintiff filed her complaint amount to $60,000. In addition, Plaintiff's attorneys have spent time preparing this complaint.

10. Under 28 U.S.C. § 1391(b), venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated . . . ."

11. Plaintiff lived in the Northern District of Illinois at the time of submitting her claim for insurance proceeds under life insurance contract VG2014840, and continues to live in the

2

Northern District of Illinois. Defendant denied the claim to a resident of the State of Illinois. Thus, a substantial part of the events giving rise to the claim occurred within this judicial district.

## STATEMENT OF FACTS

12. Lindsay Garvin applied for life insurance coverage of $100,000 with Defendant on July 19, 2023, proposing to name his daughter, Sarah Garvin, as the sole beneficiary of the policy. Lindsay Garvin submitted the first month's premium of $385.40 with the application.

13. With his application, Lindsay Garvin provided Defendant an authorization for medical record custodians to release protected health information regarding Lindsay Garvin to Defendant.

14. With his application, Lindsay Garvin submitted to Defendant a Declaration of Insurability. Question 2 of the Declaration of Insurability asked Lindsay Garvin whether "Within the past 10 years have you had, been diagnosed or been medically treated by a member of the medical profession for: . . .d. kidney, bladder, prostate or any other disease or disorder of the urinary system?" Lindsay Garvin answered "yes" to this question, and provided the name and contact information for his health care provider.

15. Question 7 of the Declaration of Insurability asked Lindsay Garvin: "Other than reported above, within the past five years have you: (a) consulted or been advised by a member of the medical profession to consult another member of the medical profession for any reason or been advised to restrict or avoid normal activities due to illness or injury?" Lindsay Garvin responded no, as there was nothing other than that to which he properly answered "yes" in question 2.d.

16. Before issuing the policy to Lindsay Garvin, on July 21, 2023 Defendant ordered prescription and medical records of Lindsay Garvin that revealed Lindsay Garvin had been

diagnosed with an enlarged prostate, and had been taking medication to treat his enlarged prostate for the previous 4 years. An enlarged prostate would necessarily cause PSA levels to be elevated.

17. After seeing records revealing Lindsay Garvin had an enlarged prostate and had been taking medication to treat it for years, and before issuing the policy to Lindsay Garvin, Defendant retained a nurse to visit Lindsay Garvin to document his height, weight, blood pressure, and to take a blood and urine sample.

18. Defendant tested Lindsay Garvin's blood for levels of glucose, A1C, cholesterol, and lipids, among other things, and for metabolites of drugs. Defendant's blood and urine sample testing revealed Lindsay Garvin had elevated A1C levels, high cholesterol, low HDL, high LDL, high cholesterol to HDL ratio, and nicotine use. Defendant did not test for Prostate Specific Antigen (PSA) levels, despite the referral form containing the option to seek testing for PSA levels.

19. Defendant considered these medical and prescription records and based its decision to underwrite the policy on these records. Defendant then included these records in its underwriting file of the policy at issue.

20. Notwithstanding its knowledge Lindsay Garvin had an enlarged prostate—which would necessarily elevate his PSA levels—and took medications for an enlarged prostate, Defendant issued the life insurance policy to Lindsay Garvin on or around August 4, 2023.

21. On February 13, 2024, Lindsay Garvin died of a heart attack. His premiums were paid up to date with Defendant at the time of death.

22. Plaintiff submitted a claim to Defendant for the life insurance proceeds under policy VG2014840.

23. Defendant investigated the claim and issued a claim denial on April 12, 2024. In the claim denial, Defendant contended Lindsay Garvin incorrectly answered questions 2.d. and 7

4

on the Declaration of Insurability, where he disclosed he had been treated for kidney, bladder, prostate or any other disease or disorder of the urinary system.

24. Defendant's claim denial asserted that it was unaware of Lindsay Garvin's elevated PSA levels, and had it been aware, it would not have insured Lindsay Garvin.

25. Defendant's basis for the denial is factually impossible because Defendant knew Lindsay Garvin had an enlarged prostate which necessarily results in elevated PSA levels.

26. Upon information and belief, recently, Defendant underwrote an applicant for life insurance coverage despite elevated PSA levels beyond any of Lindsay Garvin's tested levels. Defendant's assertion it would not underwrite Lindsay Garvin if it knew he had elevated PSA levels is thus a lie.

27. On July 30, 2024, Plaintiff appealed the denial internally to Defendant, highlighting that Lindsay Garvin correctly answered the questions in the Declaration of Insurability, and that Defendant was aware of Lindsay Garvin's enlarged prostate at the time it underwrote the life insurance policy.

28. On August 24, 2024, Defendant upheld its decision to deny Plaintiff's claim. In the appeal denial letter, Defendant asserted that based on the policy amount and responses to questions in the Declaration of Insurability, Defendant did not order any of Lindsay Garvin's medical records. This was a lie because Defendant's underwriting file reveals it ordered medical and prescription records of Lindsay Garvin before issuing the policy to him, causing Defendant to discover Lindsay Garvin's enlarged prostate—and necessarily elevated PSA levels—and treatment thereof before issuing the policy.

## COUNT I

### Damages for Breach of Contract

29. Plaintiff realleges Paragraphs 1–28 as if full stated herein.

30. Through offer and acceptance, and for good and valuable consideration, Lindsay Garvin had an agreement with Defendant, of which Plaintiff was an intended third-party beneficiary, to provide Plaintiff with life insurance proceeds in the event Lindsay Garvin died while insured by Defendant.

31. Defendant breached the agreement by failing to pay Plaintiff the insurance proceeds under the contract.

32. WHEREFORE, Plaintiff prays this Court: enter judgment in favor of Plaintiff and against Defendant, and award Plaintiff life insurance proceeds of $100,000, and order Plaintiff recovers any and all other relief to which she may be entitled.

## COUNT II

### Damages for Violation of § 155 of the Illinois Insurance Code

33. Plaintiff realleges Paragraphs 1–28 as if full stated herein.

34. Defendant is an insurance company as defined in 215 ILCS 5/2.

35. Defendant's denial of Plaintiff's claim was vexatious and unreasonable under 215 ILCS 5/155.

36. Defendant's decisions to uphold the denial was vexatious and unreasonable under 215 ILCS 5/155.

37. WHEREFORE, Plaintiff prays this Court enter an Order against Defendant and award Plaintiff statutory damages under § 155, her reasonable attorney's fees, and any and all other relief to which she may be entitled.

Respectfully Submitted,

/s/ Michael Bartolic
Attorney for the Plaintiff

Michael Bartolic
Bartolic Law
180 W. Washington Street Suite 700
Chicago, Illinois 60602
Tel: 312-635-1600
Fax: 312-635-1601